**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

LOL Finance COMPANY,

Plaintiff,

v.

F.J. FAISON, JR. REVOCABLE TRUST; ALAN G. HERRING; CARLA A. HERRING; DAVID G. HERRING; JANE HERRING; and DOROTHY S. FAISON,

Defendants.

Civil No. 09-741 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

---

Jonathan C. Miesen and Troy J. Hutchinson, **STOEL RIVES LLP**, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402, for plaintiff.

Steve W. Gaskins and Wendy M. Canaday, **FLYNN GASKINS & BENNETT, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402, for defendants F.J. Faison, Jr. Revocable Trust and Dorothy S. Faison.

Andrew S. Birrell, **BIRRELL & NEWMARK, LTD**, 333 South Seventh Street, Suite 3020, Minneapolis, MN 55402, for defendants Alan G. Herring, Carla A. Herring, David G. Herring, and Jane Herring.

Plaintiff LOL Finance Company ("LOL Finance"), a Minnesota company, filed this action to enforce personal loan guaranties provided by North Carolina residents Dorothy Faison, Alan Herring, Carla Herring, David Herring, Jane Herring, and the F.J. Faison, Jr. Revocable Trust ("Faison Trust"). The case is now before the Court on motions to dismiss filed by Dorothy Faison and the Faison Trust and by the Herrings,

both arguing that this Court lacks personal jurisdiction. For the reasons given below, both motions are denied.

## BACKGROUND

LOL Finance is a Minnesota corporation that provides financing to agricultural businesses. Perfect Pig, LLC ("Perfect Pig"), a North Carolina company, acquires and operates sow farms and hog-finishing facilities throughout the United States. GIS of North Carolina, Inc. ("GIS"), also a North Carolina company, sells semen and breeding stock to commercial sow farms, including Perfect Pig. Defendants Dorothy Faison and the Faison Trust together own 50% of Perfect Pig.[1] (Glienke Aff., Docket No. 29, ¶ 7, Ex. 4.) Defendants David Herring and his wife, Jane, own 25% of Perfect Pig, and defendants Alan Herring and his wife, Carla, also own 25% of Perfect Pig. (*Id.*) The Herrings own and operate GIS. (*Id.*, ¶ 8, Ex. 2, Ex. 4.)

LOL Finance's sister company, Land O'Lakes Purina Feed LLC ("LOLPF"), supplies animal feed to Perfect Pig and GIS. In 2004, defendants informed their LOLPF representative that they were seeking financing for Perfect Pig, and that they had been negotiating with another Minnesota-based lender. LOL Finance then sent three representatives to North Carolina to discuss whether it could provide the necessary financing. Perfect Pig subsequently sent a financing request to LOL Finance's office in Minnesota, and in support of this request defendants sent financial statements, tax returns, and other personal financial information. (*Id.*, ¶ 13.) The financial statements

[1] Dorothy Faison's husband, F.J. Faison, co-founded Perfect Pig. Dorothy Faison inherited her husband's 50% interest in the company after his death in 2006.

indicated that the Faisons' net worth exceeded $10 million, that David and Jane Herring's net worth exceeded $3 million, and that Alan and Carla Herring's net worth exceeded $1 million.

LOL Finance ultimately agreed to provide Perfect Pig with an $8 million revolving line of credit on the condition that defendants provide personal guaranties. (*Id.*, ¶ 13, Ex. 5.) In connection with this agreement, F.J. Faison, David Herring, and Alan Herring met and passed a resolution formally authorizing Perfect Pig to borrow $8 million from LOL Finance. (*Id.*, ¶ 14, Ex. 6.) The resolution stated, in part, that Perfect Pig was "duly authorized to transact business in the State of Minnesota." (*Id.*) F.J. Faison, David Herring, and Alan Herring then signed the formal loan agreement and promissory note on behalf of Perfect Pig, and all three couples signed documents absolutely and unconditionally guaranteeing payment of one-third of the newly created debt. (*Id.*, ¶¶ 15-16, Exs. 7-9.)

All of the formal loan documents and guaranties identified LOL Finance as a Minnesota lender, and these materials all contained a Minnesota choice-of-law provision that stated, in bold typeface, that they would be "governed by, construed and enforced in accordance with federal law and the laws of the State of Minnesota." (*Id.*, ¶¶ 15-16, Exs. 7-9.) In addition, these materials all added that they "ha[d] been accepted by Lender in the State of Minnesota." (*Id.*) Finally, Perfect Pig and defendants sent the resolution and all of the signed agreements to LOL Finance in Minnesota. (*Id.*, ¶ 16.)

In February 2005, LOL Finance agreed to increase Perfect Pig's line of credit to $9.2 million and to provide an additional $500,000 term loan. (*Id.*, ¶ 17, Ex. 10.) As

with the initial loan arrangement with LOL Finance, F.J. Faison, David Herring, and Alan Herring passed a resolution formally authorizing Perfect Pig to enter into these new agreements, again affirming that Perfect Pig was "duly authorized to transact business in the State of Minnesota." (*Id.*, ¶ 18, Ex. 11.) LOL Finance and Perfect Pig signed new promissory notes and a new loan agreement and all three couples executed new guaranties, with all of the documents again containing (1) Minnesota choice-of-law provisions, (2) language indicating that LOL Finance was a Minnesota lender, and (3) language indicating that the documents were accepted by LOL Finance in Minnesota. (*Id.*, ¶¶ 19, 20, Exs. 12-15.) The resolution and new contract documents were again all sent to Minnesota. (*Id.*, ¶¶ 18, 20, Ex. 11, 15.)

Later in 2005, LOL Finance agreed to extend Perfect Pig's repayment date and allowed Perfect Pig to add GIS as a co-borrower. (*Id.*, ¶ 21.) In connection with this agreement, the three couples all sent updated financial statements and tax returns to LOL Finance in Minnesota. (*Id.*, ¶ 21, Ex. 16.) LOL Finance, Perfect Pig, and GIS also signed a new loan agreement and promissory note that again retained all of the Minnesota-directed provisions included in the earlier documents. (*Id.*, ¶ 22, Exs. 17, 19.)

In 2006, LOL Finance agreed to extend Perfect Pig and GIS's repayment date twice more. (*Id.* ¶ 23.) To support their requests for these extensions, the three couples again sent updated financial statements and tax returns to LOL Finance in Minnesota. (*Id.*, ¶ 23, Ex. 20.) The documents memorializing these extensions again contained the Minnesota-directed provisions referenced above. (*Id.*, ¶ 24, Exs. 21-23.)

In early 2007, Perfect Pig and GIS informed LOL Finance that they had secured new financing from AgStar, a Minnesota-based competitor of LOL Finance. (*Id.*, ¶ 28.) To avoid losing the accounts, LOL Finance subsequently agreed to two credit line increases and extensions of Perfect Pig and GIS's repayment dates. (*Id.*) In May 2007, LOL Finance increased the credit line to $10.2 million and extended the repayment date to September 2007. (*Id.*, ¶ 29, Exs. 28-29.) To support their request for these new loan terms, defendants again provided LOL Finance with updated financial statements and tax returns. (*Id.*, ¶ 29, Ex. 26.) In addition, LOL Finance, Perfect Pig, and GIS executed new loan documents and defendants executed new guaranties (with F.J. Faison's role now filled by his estate), which all again confirmed that LOL Finance was a Minnesota lender, that the contracts were to be governed by Minnesota law, and that LOL Finance had accepted them in Minnesota. (*Id.*, ¶¶ 29-30, Exs. 28-30.)

In June 2007, LOL Finance agreed to increase Perfect Pig and GIS's credit line once again, to $11.5 million, and extended the repayment date to June 2008. (*Id.*, ¶ 31, Exs. 36-37.) Dorothy Faison, David Herring, and Alan Herring passed a resolution authorizing Perfect Pig to enter into this agreement, and again affirmed that Perfect Pig was authorized to transact business in Minnesota. (*Id.*, ¶ 33, Ex. 35.) LOL Finance, Perfect Pig, and GIS then executed new contracts, and defendants executed new personal guaranties, all including the clauses from the previous contracts and guaranties tethering the agreements to Minnesota. (*Id.*, ¶¶ 33, 35, Exs. 35, 38.) In May 2008, LOL Finance agreed to an additional extension of the repayment date after again receiving financial statements and tax returns from the defendants. (Id., ¶¶ 36-37.)

In November 2008, LOL Finance, Perfect Pig, and GIS entered into a Standstill Agreement after Perfect Pig and GIS failed to make timely payments. (*Id.*, ¶ 38, Ex. 41.) Under the terms of the agreement, which was signed by all of the individual defendants, LOL Finance agreed to forgo efforts to collect on the credit line and term loan until July 2009. (*Id.*, Ex. 41.) Following this agreement, LOL Finance became actively involved in Perfect Pig's and GIS's operations. (*Id.*, ¶ 40.) Perfect Pig sent weekly budgets to LOL Finance in Minnesota, and LOL Finance began collecting Perfect Pig's receivables and distributing the proceeds according to these budgets. (*Id.*) LOL Finance managed some of GIS's receivables as well. (*Id.*) LOL Finance also regularly inspected Perfect Pig's facilities and dealt with Perfect Pig and GIS's representatives, including David and Alan Herring. (*Id.*)

In February 2009, LOL Finance sent Perfect Pig, GIS, and defendants a letter demanding repayment of the term loan and credit line debt after Perfect Pig and GIS failed to comply with the Standstill Agreement. (*Id.*, ¶ 41, Ex. 43.) The letter indicated that defendants owed $11,469,979.63 as of February 10, 2009. (*Id.*, at Ex. 43.) After Perfect Pig and GIS failed to respond, on April 1, 2009, LOL Finance filed this action seeking to enforce the guaranties.

## ANALYSIS

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings*,

*Inc*, 380 F.3d 1070, 1072 (8th Cir. 2004) (internal quotation marks omitted). "Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts." *Id*. (internal quotation marks omitted). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id*. at 1073 (internal quotation marks omitted).

"A federal court may exercise jurisdiction over nonresident defendants only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (internal quotation marks omitted). Minnesota's long-arm statute confers jurisdiction to the fullest constitutional extent. *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007). Therefore, the Court's inquiry is limited to the question of whether an exercise of personal jurisdiction would comport with the Due Process Clause. Under the Due Process Clause, a court can exercise jurisdiction over the defendant only if "minimum contacts" exist between the forum state and the nonresident defendant. *Miller*, 528 F.3d at 1090 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

Minimum contacts exist "when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted). The defendant reasonably anticipates being haled into court if he "purposefully avails" himself of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Co. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation

marks omitted). The Eighth Circuit has "instructed courts to consider the following factors when resolving a personal jurisdiction inquiry: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interests of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Dever*, 380 F.3d at 1073-74 (internal quotation marks omitted). "Significant weight is given to the first three factors." *Id*. at 1074.

"The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction." *Id.* at 1073. The distinction relates to the third factor in the five-part test. *Miller*, 528 F.3d at 1091. "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has continuous and systematic contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Id*. (internal quotation marks omitted). "In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Id*.

LOL Finance contends that defendants' ongoing contacts with Minnesota are sufficient for this Court to exercise personal jurisdiction.[2] First, LOL Finance notes that defendants sent financial statements and tax returns to LOL Finance in Minnesota on multiple occasions from 2005 through 2008, inducing LOL Finance to enter into a

[2] LOL Finance does not specify whether they believe defendants are subject to general jurisdiction or specific jurisdiction. For the reasons given below, the Court concludes that each of the defendants is subject to specific jurisdiction, making any further discussion of general jurisdiction unnecessary.

substantial lending relationship with companies that defendants owned and managed. Second, LOL Finance points to the contract language identifying LOL Finance as a Minnesota lender, expressly tying LOL Finance's acceptance of the loan terms to Minnesota, and indicating that disputes over the loans would be governed by Minnesota law. Third, LOL Finance cites the Perfect Pig resolutions, which were drafted by several of the defendants and sent to Minnesota, and which stated that Perfect Pig is "duly authorized to transact business in the State of Minnesota."

Defendants counter that they have not been in Minnesota during the relevant time period, that they signed the contracts in North Carolina, and that – despite what is mentioned in the Perfect Pig resolutions – neither Perfect Pig nor GIS actually transact business in Minnesota. Defendants claim that their only in-person meetings with LOL Finance representatives have been in North Carolina and that the LOL Finance representatives who attended those meetings were from Indiana and Iowa. In addition, Dorothy Faison, Carla Herring, and Jane Herring claim that they had no active role in managing GIS or Perfect Pig or in obtaining loans for either company.

As an initial matter, the Court notes that on at least one prior occasion, the Eighth Circuit has determined that nonresident guarantors of an allegedly breached contract had insufficient contacts with the forum state to support an exercise of personal jurisdiction. *Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 573 (8th Cir. 1986). There, the circuit concluded that neither "[t]he mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation" nor "the guarantors' status as shareholders in . . . the debtor corporation" were sufficient to establish the necessary

minimum contacts. *Id*. In reaching this conclusion, however, the circuit expressly distinguished cases where "there has been substantive identity of the guarantors and the corporation whose obligation they guarantee, evidence that the beneficiary of the guarantee contract would not have entered into the transaction without the guarantees of specific individuals, or a provision in the guarantee contract or the underlying contract stating that the law of the forum state would control." *Id.* at 573-74 (citations omitted).

Following this decision, another court in this district found specific personal jurisdiction over nonresident guarantors in a case with facts similar to those at issue here. In *Residential Funding Corp. v. Anvil Funding Corp.*, the court concluded that each of the circumstances distinguished by the Eighth Circuit in *Arkansas Rice* were present, as (1) the personal guarantors were officers of the corporations seeking financing and stood to benefit from the underlying contracts; (2) the evidence suggested that if not for the guaranties, the loans would not have occurred; and (3) the underlying contracts contained a Minnesota forum selection clause. No. 04-3043, 2005 WL 1323940, at *4 (D. Minn. June 3, 2005).

In addition, the Third Circuit has approved an exercise of personal jurisdiction over nonresident guarantors in another case with similar facts. In *Mellon Bank (East), PSFS, Nat'l Ass'n v. Farino*, the circuit considered a Pennsylvania court's exercise of personal jurisdiction over three limited partners in several Virginia partnerships. 960 F.2d 1217, 1219 (3d Cir. 1992). The circuit noted that the guarantors had sought financing from the plaintiff bank – out of all of the other possible lenders in the country – with full knowledge that the bank was located in Pennsylvania. *Id*. at 1224. The circuit

added that each defendant had sent personal financial information in connection with the personal guaranties and had been required to make their payments to Pennsylvania. The Court added that although the defendants had not physically traveled to the forum state, the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id*. at 1225 (citing *Burger King*, 471 U.S. at 476).

Although the Court is mindful that in the context of personal jurisdiction, "[e]ach case must be judged on its particular facts," *Mellon Bank*, 960 F.2d at 1224; *see also Kulko v. Superior Court*, 436 U.S. 84, 92 (1978) ("[T]he 'minimum contacts' test . . . is not susceptible of mechanical application; rather, the facts of each case must be weighed."), the Court concludes that the boundaries of due process discussed and applied in *Arkansas Rice*, *Residential Funding*, and *Mellon Bank* sufficiently demonstrate that the contacts at issue here are adequate to support this Court's exercise of specific personal jurisdiction over each defendant.

The Court first turns to the nature and quality of defendants' contacts. *See Dever*, 380 F.3d at 1073-74. First, as in *Mellon Bank*, each of the defendants was plainly aware that they were dealing with a Minnesota lender, and also that they were availing themselves of the protection of Minnesota's laws. As explained above, the critical loan documents and guaranties all listed LOL Finance's Minnesota address, included a Minnesota choice-of-law provision, and indicated that LOL Finance would be "accept[ing]" the documents in Minnesota, where the documents were mailed. Although there was no explicit forum selection clause in the critical documents, these additional

Minnesota-directed terms – alongside the resolutions repeatedly indicating that Perfect Pig was "duly authorized to transact business in the State of Minnesota" – were more than enough to collectively signal that defendants were entering into a business relationship with a close nexus to Minnesota, and had assumed a risk of facing litigation there. *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1434 (8th Cir. 1995) (explaining that although choice-of-law provisions are not determinative, they are "an important factor in determining whether [the defendant] purposely availed itself in the forum state").

In addition, as in *Residential Funding*, there appears to be substantive identity between at least some of the defendants and both Perfect Pig and GIS,[3] as defendants collectively constitute the great majority of the two companies' ownership and management. Specifically, David Herring and Alan Herring were both co-founders of Perfect Pig and GIS; they continue to hold ownership stakes in both companies; and, as noted above, both of them executed many of the critical documents in this case, suggesting continuing engagement in the companies' affairs. In addition, Dorothy Faison owns 50% of Perfect Pig and also executed several of the critical corporate documents discussed above. These relationships with the underlying contracting companies distinguish these defendants from either mere passive guarantors or individuals operating merely in their capacity as corporate agents, and underscore that these defendants were

[3] While this factor weighs less heavily for the Faison Trust, Carla Herring, and Jane Herring, who disclaim any active role in the two companies, the Court concludes that the additional factors weighed above – including the apparently critical role of the personal guaranties and the various Minnesota-related provisions included in the critical documents – are sufficient to justify an exercise of personal jurisdiction over these defendants.

likely to be the primary beneficiaries of any favorable business relationships entered into by the two companies. *See Ark. Rice*, 797 F.2d at 573-74.

Finally, the personal guaranties were listed among the express preconditions for the loan agreements, (*see* Glienke Aff., Docket No. 29, Ex. 5, at 2), and their critical role in those agreements is adequately demonstrated by LOL Finance's repeated insistence that the defendants update their financial information before the adjustment of any loan terms. *See Mellon Bank*, 960 F.2d at 1223. In those circumstances, the Court concludes that the nature and quality of defendants' contacts with Minnesota weighs in favor of this Court's exercise of personal jurisdiction.

As to the quantity of defendants' contacts, the Court notes that the summary above includes multiple personal guaranties, corporate resolutions, and loan documents mailed to Minnesota over the course of several years. In any event, "a single contact with a forum may be sufficient to confer personal jurisdiction over a nonresident defendant if the cause of action arose out of that contact." *Residential Funding*, 2005 WL 1323940, at *4. Here, LOL Finance seeks to enforce guarantor obligations that arose directly out of the contacts discussed above. Accordingly, both the second factor and the third factor of the test for personal jurisdiction support the exercise of specific jurisdiction as well. *See Dever*, 380 F.3d at 1073-74.

As to Minnesota's interest in providing a forum to its residents, the Court notes that this interest is heightened in a case such as this, where the obligations assumed by the nonresident defendants exceeded ten million dollars, and a failure to collect on those obligations could have an appreciable impact on a Minnesota business. Accordingly, this

factor also supports the exercise of jurisdiction. As to the fifth factor, the Court finds nothing in the record that demonstrates that the inconvenience of litigating in Minnesota outweighs the inconvenience to LOL Finance of litigating in North Carolina, or otherwise outweighs the factors supporting this Court's exercise of personal jurisdiction discussed above. *See also Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995) (noting that the plaintiff "is normally entitled to select the forum in which it will litigate").

In sum, the Court finds that each defendant has sufficient contacts with Minnesota to warrant an exercise of personal jurisdiction. The Supreme Court has clearly indicated that actual presence in a forum is unnecessary, *see Burger King*, 471 U.S. at 476, and in light of the length of the period of time over which defendants' contacts took place and the magnitude of the lending relationship that resulted, the Court finds nothing in such a conclusion that offends "fair play and substantial justice," or could plausibly upset the reasonable expectations of the parties. *See Dever*, 380 F.3d at 1073. Accordingly, both motions to dismiss are denied.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Dorothy Faison and F.J. Faison, Jr. Revocable Trust's Motion to Dismiss [Docket No. 22] is **DENIED**.

2. Defendants Alan Herring, Carla Herring, David Herring, and Jane Herring's Motion to Dismiss [Docket No. 14] is **DENIED**.

DATED: October 16, 2009
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge