UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

LOL Finance Company,

        Plaintiff,

vs.

F.J. Faison, Jr. Revocable Trust,
Alan G. Herring, Carla A. Herring,
David G. Herring, Jane Herring,
and Dorothy S. Faison,

        Defendants.           Civ. No. 09-741 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Plaintiff LOL Finance Company ("LOLFC") for Summary Judgment. A Hearing on the Motion was conducted on May 26, 2010, at which time, LOLFC appeared by Jonathan C. Miesen, Esq., and the

Defendants made no appearance. For reasons which follow, we recommend that the Motion be granted.

## II. Factual and Procedural Background

LOLFC, which is a Minnesota corporation, filed its Complaint in this action on April 1, 2009, alleging that the Defendants guaranteed a number of loans from LOLFC to two (2) companies in North Carolina -- namely the Perfect Pig, LLC ("Perfect Pig"), and GIS of North Carolina, Inc. ("GIS") -- who defaulted on those loans. See, Complaint, Docket No. 1. The Complaint seeks Judgments against the Defendants for the total unpaid amount, id., and the Motion for Summary Judgment seeks that total amount, plus interest, apportioned among the Defendants. See, Amended Motion for Summary Judgment, Docket No. 59.[1] LOLFC also seeks a declaration that it is not required to pursue other remedies against the companies, before enforcing the Judgments that it might obtain in this action, and that it is not precluded, by this litigation, from filing other actions. Id.

---

[1]In his Affidavit, Daniel L. Glienke avers that, as of March 1, 2010, the outstanding principal balance on the revolving line of credit was $8,555,793.46, plus interest of $432,533.86, that the principal owed on the term loan was $398,784.50, plus interest of $55,169.07, for a total amount owed of $9,442,280.89, and that the daily accrual of interest for both the term loan, and the line of credit, totaled $1,336.88. See, Affidavit of Daniel L. Glienke ("Glienke Aff. 2"), Docket No. 57, at p. 7¶¶12-13 of 10.

Defendants Alan Herring ("Herring"), Carla Herring ("C. Herring"), who are married, and David Herring ("D. Herring"), and Jane Herring ("J. Herring"), who are also married (collectively, the "Herring Defendants"), initially appeared pro se and, on April 23, 2009, joined in a Motion for an Extension of Time to Answer. See, Docket No. 10. Thereafter, on May 18, 2009, the Herring Defendants filed a Motion to Dismiss, through a retained attorney, see, Docket No. 42, who filed an Answer on behalf of the Herring Defendants on October 30, 2009. See, Docket No. 44. The Plaintiff filed its Amended Motion for Summary Judgment on March 5, 2010, see, Docket No. 59, and shortly after the Amended Summary Judgment Motion was filed, the Defendants' attorney filed a Motion to Withdraw as their counsel. See, Docket No. 61. We granted that Motion on May 3, 2010, without objection from the Herring Defendants. See, Docket No. 69. In his supporting Affidavit, the Herring Defendants' former attorney averred that the Herring Defendants' counsel, in North Carolina, had represented that the Herring Defendants did not intend to defend the case in Minnesota. See, Affidavit of Andrew S. Birrell, Docket No. 63, at p. 2 ¶6 of 2.

In their Answer, the Herring Defendants admit to the majority of the factual allegations of the Complaint, but they deny that GIS was a party to the Standstill

Agreement, see, <u>Docket No. 44</u>, at p. 4¶18 of 9, deny the allegation that a letter, which was sent by LOLFC to the Defendants, and which is dated February 17, 2009, sought payment from them as Guarantors, <u>id.</u> at p. 5¶23 of 9, and admit that they did not make the payments as set forth in the letter, but deny that the Herring Defendants owe the amounts alleged, or the amount of interest claimed by LOLFC. <u>Id.</u> at p. 5¶21 of 9. In addition, the Herring Defendants repeatedly cite to the Guaranty documents, as well as other documents, as the best evidence of the terms and obligations at issue, and deny any allegations that are inconsistent with those documents -- most notably with respect to the allegation that the Perfect Pig and GIS defaulted on their obligations. <u>Id.</u> at p. 4¶19 of 9. Further, the Herring Defendants raise, as affirmative defenses, that LOLFC seeks an improper advisory opinion by way of the Declaratory Judgment, and that the Guaranties are unenforceable against C. Herring and J. Herring, as a result of LOLFC's alleged violation of the Equal Credit Opportunity Act ("ECOA"), Title 15 U.S.C. §1691, <u>et seq.</u>, by requiring them to co-sign loans to their husbands' businesses. <u>Id.</u> at pp. 7-8¶¶1 and 6 of 9.

On May 13, 2010, the Plaintiff and Defendants F.J. Faison, Jr. Revocable Trust, and Dorothy Faison, entered into a Stipulation for Judgment, in the amount of $5,750,000.00, jointly and severally, and for a Declaratory Judgment, as well as

permitting the Plaintiff to file an application for costs and fees associated with the lawsuit. See, <u>Stipulation, Docket No. 72</u>. We approved that Stipulation on June 9, 2010, see, <u>Docket No. 75</u>, and, as a consequence, the Amended Motion for Summary Judgment now only relates to the Herring Defendants.

As was explained by counsel for LOLFC at the Hearing, in the Amended Motion for Summary Judgment, as it pertains to the Herring Defendants, LOLFC seeks a monetary Judgment in the total amount of $2,875,000.00, from Herring and C. Herring, jointly and severally, with no interest, and $817,280.89, plus interest of $1,336.88 per day from D. Herring and J. Herring, which is the total amount accruing on the current indebtedness of the Perfect Pig and GIS. See, <u>Affidavit of Daniel L. Glienke, ("Glienke Aff. 2"), Docket No. 57</u>, at p. 7¶13 of 10, and Exhibits A and B.

During the litigation, LOLFC submitted two (2) Affidavits of Daniel L. Glienke ("Glienke"), who is the Director of Business Development for LOLFC, and who participated in the decisions to make the loans to the Perfect Pig and GIS, the first of which was filed in opposition to the Defendants' Motion to Dismiss. See, <u>Affidavit of Daniel L. Glienke ("Glienke Aff. 1"), Docket No. 29</u>, at p. 1¶1 of 24. The Affidavit has not been contested by the Defendants, and therefore, we find the averments in that

Affidavit to be undisputed.[2]  In his first Affidavit, Glienke attests that, during the

relevant period of time, D. Herring and his wife, J. Herring, owned 25% of the Perfect

Pig; that Herring and his wife, C. Herring, owned 25% of the Perfect Pig, and that the

Herring Defendants owned most or all of GIS.  Id. at p. 3¶¶7-8 of 24.

Glienke avers that, in 2004, several of the Defendants approached LOLFC

seeking financing for the Perfect Pig, id. at p. 3¶11 of 24, and that, as a consequence,

the Perfect Pig and LOLFC entered into a Business Loan Agreement and Promissory

Note, for a revolving line of credit of $8,000,000.00.  Id. at pp. 5¶14 and 6¶15 of 24.

Glienke attests that, thereafter, LOLFC and the Perfect Pig entered into a Term Loan,

in the amount of $500,000.00, and agreed to an increase in the amount of the

revolving line of credit, id. at p. 7¶17 of 24, that GIS later was added, in October of

2005, as a co-borrower, id. at p. 9¶21 of 24, and that, ultimately, the principal amount

on the revolving line of credit was increased to $11,500,000.00, in 2007.  Id. at p.

13¶28 of 24.

---

[2]Although Glienke submitted that Affidavit in opposition to the Defendants'
previous Motion to Dismiss for lack of Personal Jurisdiction, and the Defendants filed
a Reply, the Defendants did not contradict the averments in the Affidavit.  See,
Herring Defendants' Reply Memorandum, Docket No. 31.

According to Glienke, because the Perfect Pig was a relatively new business, when it first approached LOLFC for financing, and was undercapitalized, LOLFC would not have agreed to the credit line without personal guaranties from the Defendants. Id. at p. 5¶13 of 24. Glienke attests that all of the Defendants executed personal Guaranties for the revolving line of credit in 2004, and the term loan in 2005, and he has attached Exhibits 9 and 10 to his Affidavit in support. Id. at p. 6¶16 of 24 and Exhibits 9 and 10. Glienke states that the Defendants continued to execute new Commercial Guaranties, for each increased limit in the revolving credit line, including the final increase in 2007, and that those Guaranties contained language that the Herring Defendants "absolutely and unconditionally" guaranteed the obligations of the Perfect Pig and GIS. Id. at pp. 8-9¶20 of 24 and Exhibit 15; pp. 14-15¶30 of 24 and Exhibit 30; p. 17¶35 of 24 and Exhibit 38.

As attested by Glienke, in order to guarantee the financing, D. Herring and J. Herring submitted a joint financial statement to LOLFC, as did Herring and C. Herring. Id. at pp. 4-5¶13 of 24 and Exhibit 4 (financial statements entitled "David G. and Jane H. Herring Balance Sheet -- May 1, 2004" and "Alan and Carla Herring Balance Sheet -- May 1, 2004."). Glienke avers that the initial financial information provided by D. Herring and J. Herring revealed that they had a combined net worth

of almost $3,000,000.00, and that the joint financial statement of Herring and C. Herring disclosed that they had a combined net worth of almost $1,000,000.00, id., and that that information, along with the Faison Defendants' financial statements, prompted LOLFC to provide a revolving credit line in the amount of $8,000,000.00 initially, id., and later, in the amount of $11,500,000.00.  As related by Glienke, the Defendants continued to provide joint financial statements, as couples.  Id. at p. 9¶21 of 24 and Exhibit 16; pp. 10-11¶23 of 24 and Exhibit 20; p. 13¶28 of 24 and Exhibit 26; p. 18¶36 of 24 and Exhibit 39.

In addition, Glienke avers that the Perfect Pig and GIS failed to make timely payments on the amounts due on the revolving line of credit, as well as on the term loan, id at p. 19¶38 of 24, and that LOLFC, the Perfect Pig, and GIS, entered a Standstill Agreement, in which it was agreed that LOLFC would not try to collect on the loans until July 31, 2009, if, among other things, the Perfect Pig made all of the scheduled payments, and became current on all payments, by December 1, 2008.  Id. and Exhibit 41.  Glienke attests that the Standstill Agreement was executed by the Perfect Pig, GIS, and all of the Defendants, as Guarantors.  Id. at p. 20¶38 of 24.

Glienke further avers that the Perfect Pig and GIS did not comply with the terms of the Standstill Agreement, the Business Loan Agreements, or the Promissory

Notes, and that, on February 17, 2009, legal counsel for LOLFC sent the Perfect Pig, GIS, and the Defendants, a formal letter demanding full payment on the revolving line of credit, and the term loan, but that the Defendants did not respond to the letter. <u>Id.</u> at 21¶41 of 24 and Exhibit 43. As related by Glienke, LOLFC entered into three (3) Commercial Security Agreements with the Perfect Pig; three (3) Commercial Security Agreements with the Perfect Pig and GIS; a Mortgage with the Perfect Pig; and a Deed of Trust with GIS, in order to secure the loans, <u>id.</u> at pp. 21-22¶43 of 24, and that, approximately two (2) weeks after this lawsuit was filed, the Perfect Pig filed for Chapter 11 bankruptcy. As a result of that bankruptcy filing and the downturn in the agricultural industry, LOLFC will be unable to recover the amounts due without enforcing the personal Guaranties. <u>Id.</u> at p. 22¶¶44-45 of 24.

Glienke filed a second Affidavit, in support of the Amended Motion for Summary Judgment, in which he attests that LOLFC relied upon the financial statements, which had been provided by the Defendants and, in particular, that LOLFC required J. Herring, and C. Herring, to sign personal guaranties because LOLFC believed that they possessed joint ownership, with their respective husbands, over the assets listed in the financial statements, and not because LOLFC intended to discriminate against their husbands. See, <u>Glienke Aff. 2</u>, supra at pp. 2-3¶¶4-5, 5¶9,

and 6¶11 of 10. As attested by Glienke, LOLFC believed that it would not be able to enforce any Judgments against the assets, without the Guaranties of all of the owners, and assertedly, that no one sought to clarify that the assets listed were individually owned. Id.

As noted, the Herring Defendants have not filed a response to the Motion for Summary Judgment, nor have they submitted any evidence to show the existence of any genuine issues of material fact so as preclude Summary Judgment.

## III. Discussion

A.    Standard of Review.    Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, Minnesota Deli Provisions, Inc. v. Boar's Head Provision Co., Inc., 606 F.3d 544, 548 (8th Cir. 2010); Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir.

2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Minnesota Deli Provisions, Inc. v. Boar's Head Provision Co., Inc.</u>, supra at 548; <u>Davis v. Oregon County, Missouri</u>, 607 F.3d 543, 548 (8th Cir., June 10, 2010)("A fact is material when it might affect the outcome of the suit under the governing law."); <u>Planned Parenthood of Minnesota/ South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e)(2) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." <u>Rule 56(e)(2), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v.</u>

- 11 -

Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Cole v. Homier Distributing Co., Inc., 599 F.3d 856, 864 (8th Cir. 2010); Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

      B.    Legal Analysis. As we have noted, the Herring Defendants have not filed a Response to the Motion and, with respect to the Motion to Withdraw, former counsel for the Herring Defendants informed the Court that they had expressed their

intention to not defend the claims against them in this case. The Eighth Circuit has held that a District Court should consider, and decide, a Motion for Summary Judgment, even where the non-moving party has not responded, and therefore, we find LOLFC's Motion to be ripe for adjudication. See, Jetton v. McDonnell Douglas Corp., 121 F.3d 423, 427 (8th Cir. 1997); see also, St. Louis University v. Glass, 864 F. Supp. 110 (E.D. Mo., 1994)(deciding Motions for Summary Judgment where the defendant had not responded).

Notwithstanding the Herring Defendants' failure to respond, LOLFC, as the moving party, has the burden of showing that there are no genuine issues of material fact, and that, as a matter of law, it is entitled to the relief it seeks. See, Mack v. Dillon, 594 F.3d 620, 622 (8th Cir. 2010)("[F]ailure to respond to [a] summary judgment motion does not automatically compel resolution in favor of [the] moving party; [the] reviewing court must still determine whether entry of summary judgment was appropriate."), citing United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, St. Louis, Mo., 27 F.3d 327, 329 n. 1 (8th Cir. 1994); see also, Soliman v. Johanns, 412 F.3d 920, 922 (8th Cir. 2005)("As to the merits, we must determine whether entry of summary judgment was proper despite [the plaintiff's] failure to respond to the motion."), cert. denied, 549 U.S. 865 (2006).

From the Herring Defendants' Answer, the only facts alleged in the Complaint which were denied, are whether GIS is a party to the Standstill Agreement, whether the letter of February of 2009 to the Defendants sought payment on the Guaranties, and whether the amounts that LOLFC claims are owed, are accurate. Of course, a party may not merely rest upon its pleading to demonstrate a genuine issue of material fact, but must show, through the presentation of admissible evidence, that specific facts exist which create a genuine issue for Trial. See, Brandt v. Davis, 191 F.3d 887, 891 (8th Cir. 1999). However, in the interest of completeness, and in light of the holdings of our Court of Appeals, that we must consider the merits of the Motion for Summary Judgment even in the absence of a substantive response, we examine the evidence, that has been submitted by LOLFC, together with the legal defenses that were raised in the Defendants' Answer. See, Wales v. Trung, 2009 WL 4906502 at *3 (D. Minn., December 16, 2009)(examining the evidence submitted by the movant in support of a Motion for Summary Judgment on the merits, where the plaintiff had failed to respond).

      1.     The Evidence Submitted by LOLFC. Even though the Answer of the Herring Defendants contested some of the factual allegations in LOLFC's Complaint, we find those factual disputes to be immaterial, as they have no bearing

upon the ultimate issue of whether the Herring Defendants are liable, under the Guaranties, for the loans to the Perfect Pig and GIS. See, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 248; <u>Davis v. Oregon County Missouri</u>, supra at 548 ("A fact is material when it might affect the outcome of the suit under the governing law.").

While the Herring Defendants' Answer asserts that the relevant loan documents are the best evidence of their terms, see, <u>Answer</u>, supra at pp. 3-4 ¶¶15-17 (asserting that the Guaranties are the best evidence, and denying only those allegations that are inconsistent with the Guaranties), the Herring Defendants do not deny that GIS and the Perfect Pig entered the relevant loans, see, <u>Glienke Aff. 1, Docket No. 29-2</u>, Exhibit 13 (the Promissory Note for the Term Loan), <u>Glienke Aff. 1, Docket No. 29-6</u>, Exhibit 36 at p. 19 of 75 (the 2007 Business Loan Agreement, containing the term that failure to make any payment when due will constitute an Event of Default), and Exhibit 37 (the 2007 Promissory Note for the revolving line of credit); that the Herring Defendants signed Guaranties for those loans, see, <u>Glienke Aff. 1, Docket No. 26-6</u>, Exhibit 38 (the 2007 signed Guaranties);[3] that the Perfect Pig and GIS defaulted by failing to make timely payments, see, <u>Glienke Aff. 1</u>, supra at pp. 20¶38 and 21¶41

---

[3]The Guaranties include the term loan as well as the loans under the revolving line of credit. See, <u>Glienke Aff. 1, Docket 29-6</u>, Exhibit 38 at pp. 40 and 46 of 75.

(averring that GIS and Perfect Pig defaulted on the loans); or that the Herring Defendants failed to repay the loans under the Guaranties. See, <u>Glienke Aff. 1</u>, supra at p. 21¶42 (averring that the Defendants failed to respond to the demand letter upon the default of the Perfect Pig and GIS).

As far as the amounts owed, under the loans made to the Perfect Pig and GIS, Glienke has averred that the principal and interest owed on the loan made under the revolving line of credit, and the term loan, as of March 1, 2010, amounts to $8,555,793.46, and $398,784.50, respectively, and that the interest on the loans, together, accrues daily at the rate of $1,336.88, see, <u>Glienke Aff. 2</u>, supra at p. 7¶¶12-13 of 10, and the Herring Defendants have not disputed those attestations.

As a consequence of those averments, and the submitted documents, in the absence of challenge by the Herring Defendants, and having found no apparent inconsistencies in LOLFC's evidence, we find that there are no genuine issues of material fact on the issues presented in this case. Accordingly, the next step in our inquiry is to determine whether, as a matter of law, LOLFC is entitled to Judgment in its favor. See, <u>HealthEast Bethesda Hosp. v. United Commercial Travelers of America</u>, 596 F.3d 986, 987 (8th Cir. 2010)(Summary Judgment is appropriate if there

is no genuine issue of material fact, and the party is entitled to Judgment, as a matter of law).

In the absence of a valid defense, and under Minnesota law, which applies pursuant to the choice of law provisions in the Guaranties, the undisputed facts demonstrate, as a matter of law, that the Herring Defendants are liable, pursuant to the Guaranties, for the defaults of the Perfect Pig and GIS.  See, <u>Premier Bank v. Becker Development, LLC</u>, 767 N.W.2d 691, 696 (Minn. App. 2009)("[A] contract of guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another and which binds the obligor to performance in the event of nonperformance by the one primarily bound to perform."), citing <u>Clark v. Otto B. Ashbach & Sons, Inc.</u>, 64 N.W.2d 517, 522 (Minn. 1954), and quoting <u>Schmidt v. McKenzie</u>, 9 N.W.2d 1, 4 (Minn. 1943); <u>Baker v. Citizens State Bank fo St. Louis Park</u>, 349 N.W.2d 552, 557 (Minn. 1984). Accordingly, our next step is to examine the defenses raised by the Herring Defendants, in their joint Answer.

   2.   <u>The Herring Defendants' Defenses</u>.  As each defense requires a different analysis, we consider them separately.

a.     The ECOA Defense.  In their Joint Answer, the Herring Defendants assert, as a defense, that J. Herring and C. Herring, who are the wives of D. Herring and Herring, respectively, cannot be held liable under the Guaranties, because requiring them to sign the Guaranties constituted an act of discrimination against their husbands in violation of the ECOA, pursuant to the Federal Reserve Board Regulation, which is located at 12 C.F.R. Section 202.7(d)(1).  See, Answer, supra at p. 8¶6 of 9.  LOLFC argues that, as a matter of law, the ECOA does not provide an affirmative defense, such that a violation of the provision would render a loan or guaranty unenforceable, and that, as a factual matter, LOLFC did not discriminate against the Herring husbands, but rather, since the Herrings submitted joint financial statements by each couple, LOLFC reasonably believed that the assets listed therein were jointly owned, and that LOLFC's ability to collect on those assets would be impeded, or prevented, if it did not have the Guaranty of each owner.

The ECOA provides, in relevant part, that "[i]t shall be unlawful for any creditor to discriminate against any applicant,[4] with respect to any aspect of a credit

---

[4]LOLFC urges us to adopt the holding of the Seventh Circuit, that a Guarantor is not an "applicant" under the relevant statute, even though the Regulations define "applicant" to include Guarantors.  See, Moran Foods, Inc. v. Mid-Atlantic Market Development Co., LLC, 476 F.3d 436, 441 (7th Cir. 2007), cert. denied, 552 U.S. 821

(continued...)

transaction * * * on the basis of * * * sex or marital status * * *." <u>Title 15 U.S.C.</u>

<u>§1691(a)(1)</u>.  The Federal Reserve Board Regulations provide, in addition, that "a

creditor shall not require the signature of an applicant's spouse or other person, other

than a joint applicant, on any credit instrument if the applicant qualifies under the

creditor's standards of creditworthiness for the amount and terms of the credit

requested[,] [and] [a] creditor shall not deem the submission of a joint financial

statement or other evidence of jointly held assets as an application for joint credit."

<u>Title 12 C.F.R. §202.7(d)(1)</u>.

---

[4](...continued)
(2007).  The Eighth Circuit has not addressed that issue, but at least one Court in the
Eastern District of Missouri has found the <u>Moran</u> reasoning to be persuasive, since the
main purpose of the ECOA was to eradicate discrimination against women --
particularly married women -- who creditors would frequently refuse to consider for
individual loans.  See, <u>Champion Bank v. Regional Development, LLC</u>, 2009 WL
1351122 at *3 (E.D. Mo., May 13, 2009).  Indeed, in <u>Champion</u>, the Court found the
same argument, that is raised by the Herring Defendants here, to be circular, and to
fail to state a claim under the statute.  <u>Id</u>.  However, as the Court noted in <u>Moran</u>, its
holding conflicts with the Regulations, such that the Court explicitly ignored those
Regulations, and other Courts have held, pursuant to the Regulations, that guarantors
are covered by the ECOA.  See, e.g., <u>Bank of the West v. Kline</u>, 782 N.W.2d 453, 458
(Iowa 2010)(holding that, under the Regulations, guarantors are "applicants").
However, we need not decide that specific issue here for, as we discuss in the text of
the opinion, there is no genuine issue of material fact, and as a matter of law, LOLFC
did not violate the ECOA, by requiring the Guaranties of the Herring wives.

Further, the Regulations provide that, for unsecured credit, the creditor may require the signature of a joint owner in property of the applicant, so as "to enable the creditor to reach the property being relied upon in the event of the death or default of the applicant," Title 12 C.F.R. §202.7(d)(2), and, where the applicant seeks secured credit, a "creditor may require the signature of the applicant's spouse or other person on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the property being offered as security available to satisfy the debt in the event of default * * *." Title 12 C.F.R. §202.7(d)(4); see also, Title 12 C.F.R. §202.2(e) ("applicant" includes a guarantor, for purposes of Section 202.7(d)); but see, Moran Foods, Inc. v. Mid-Atlantic Market Development Co., LLC, 476 F.3d 436, 441 (7th Cir. 2007)("applicant" does not include "guarantor"), cert. denied, 552 U.S. 821 (2007).

We first address LOLFC's legal argument, that a violation of the ECOA does not render a loan invalid or enforceable. The only Court in our Circuit that has considered a Counterclaim, and a corresponding affirmative defense, in circumstances similar to those presented here, dismissed the Counterclaim as without merit, based upon that Court's conclusion, that the defendant could not "show discrimination by virtue of the fact that she chose to guarantee her husband's business loan," and found

*Moran Foods, Inc. v. Mid-Atlantic Market Development Co., LLC*, 476 F.3d 436, 441 (7th Cir. 2007), cert denied, 552 U.S. 821 (2007), to be persuasive. See, *Champion Bank v. Regional Development, LLC*, 2009 WL 1351122 at *3 (E.D. Mo., May 13, 2009). For reasons we have addressed, we do not follow *Champion* to resolve this case, and we are wary of categorically discounting the Federal Reserve Board's Regulations.

Other Courts, that have considered the issue of whether the ECOA can be raised as an affirmative defense in a collection action, have determined that the ECOA provides a remedy in the form of damages, but not in the form of a rescission of the loan agreement or guaranty, and that, therefore, the ECOA cannot be employed as an affirmative defense. See, *Matsco v. Clermont Center for Comprehensive Dentistry, P.A.*, 2010 WL 746709 at *3 (M.D. Fla., March 2, 2010)[collecting cases]; *Western Capital Partners, LLC v. Brookhollow, LLC*, 2007 WL 1202851 at *5 (E.D. Va., April 19, 2007); *FDIC v. 32 Edwardsville, Inc.*, 873 F. Supp. 1474, 1480 (D. Kan. 1995); *FDIC v. Skotzke*, 881 F. Supp. 364, 367-68 (S.D. Ind. 1994); *Resolution Trust Corp. v. Schonacher*, 844 F. Supp. 689, 695-96 (D. Kan. 1994); *Riggs National Bank of Washington, D.C. v. Linch*, 829 F. Supp. 163, 169 (E.D. Va. 1993), aff'd, 36 F.3d 370 (4th Cir. 1994); *CMF Virginia Land, L.P. v. Brinson*, 806 F. Supp. 90, 95 (E.D. Va.

1992); <u>Diamond v. Union Bank and Trust of Bartlesville</u>, 776 F. Supp. 542, 544 (N.D. Okla. 1991); see also, <u>Hammons v. Ehney</u>, 924 S.W.2d 843, 852 (Mo. 1996).

The Courts in those cases reasoned that the ECOA specifically provides for damages as a remedy, but does not contain a provision which specifically permits loan invalidation as a remedy. See, <u>Matsco v. Clermont Center for Comprehensive Dentistry, P.A.</u>, supra at *3 ("[T]he ECOA, by its own terms, sets forth the contemplated remedy -- a federal civil action for actual damages, punitive damages not to exceed $10,000, attorney's fees, and/or injunctive relief * * *," and finding that "[t]he ECOA does not provide for the invalidation of an underlying obligation, and [] the caselaw interpreting the ECOA has held that the Act cannot form the basis of an affirmative defense * * *."); <u>FDIC v. 32 Edwardsville, Inc.</u>, supra at 1480; <u>Resolution Trust Corp. v. Schonacher</u>, supra at 695-96; <u>Riggs National Bank of Washington, D.C. v. Linch</u>, supra at 169; <u>CMF Virginia Land, L.P. v. Brinson</u>, supra at 95 ("Invalidation of the debt itself is a remedy too drastic for the Court to implement simply by reading between the lines of the ECOA," but allowing the affirmative defense to proceed as a compulsory Counterclaim); <u>Diamond v. Union Bank and Trust of Bartlesville</u>, supra at 544 ("[T]here is no authority, in statutory

language or case law, for the proposition that a violation of the ECOA renders an instrument void.").

However, the Courts of Appeals for the First and Third Circuits, and a number of other Courts, have held that a claimed violation of the ECOA may constitute a proper affirmative defense, or can, at least, be asserted as a Counterclaim for damages, or for recoupment.  See, Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28, 32-33 (3rd Cir. 1995)(ECOA provides a defense to enforcement of the illegal instrument); Bolduc v. Beal Bank, SSB, 167 F.3d 667, 672 (1st Cir. 1999)(in dicta, noting that the plaintiff could have asserted an ECOA defense, under the recoupment doctrine); Integra Bank/Pittsburgh v. Freeman, 839 F. Supp. 326, 329-30 (E.D. Pa. 1993)(ECOA violation may be asserted under the common law doctrine of recoupment, but not to invalidate the instrument); F.D.I.C. v. Medmark, Inc., 897 F. Supp. 511, 514 (D. Kan. 1995)(finding Silverman to be persuasive, with little discussion); CMF Virginia Land, L.P. v. Brinson, supra at 93, and 95 (ECOA does not provide an affirmative defense to a debt, but construing the asserted defense as a Counterclaim); see also, Boyd v. United States Bank National Ass'n, 2007 WL 2822518 at *16-17 (D. Kan., September 26, 2007)(a creditor who has violated the ECOA should not be permitted to seek payment from a guarantor, who would not

have been made such without the violation); <u>Western Capital Partners, LLC v. Brookhollow, LLC</u>, supra (construing stricken ECOA defense as a Counterclaim for recoupment); <u>Bank of the West v. Kline</u>, 782 N.W.2d 453, 462 (Iowa 2010)(finding that because, under Iowa law, an illegal contract is unenforceable, the ECOA can be used as an affirmative defense to avoid liability on an illegally-obtained guaranty); <u>Mundaca Investment Corporation v. Emery</u>, 674 A.2d 923, 925 (Me. 1996); <u>Eure v. Jefferson National Bank</u>, 448 S.E.2d 417, 420-42 (Va. 1994), citing <u>Kaiser Steel Corp. v. Mullins</u>, 455 U.S. 72 (1982)(holding that, in the context of labor contracts, the illegality of the term is a valid defense).

In those cases, the Courts have underscored the provision of the ECOA, which provides a broad grant of equitable authority in the Courts to structure remedies, and have reasoned that it would be inequitable to allow a creditor, who has sought an illegal guaranty on a loan, by requiring a spouse to co-sign a loan in violation of the ECOA, to recover from the spouse who would not have co-signed but for the violation. See, <u>Silverman v. Eastrich Multiple Investor Fund, L.P.</u>, supra at 32, citing <u>Title 15 U.S.C. §1691e(c)</u>; <u>Integra Bank/Pittsburgh v. Freeman</u>, supra at 331 (concluding that Section 1691e(c) permitted the Court to bar recovery by the lender); <u>Boyd v. United States Bank National Ass'n</u>, supra at *17. Notably, the Court in

Silverman did not invalidate the underlying business loan, or the husband-partner's Guaranty; it only held that the wife's Guaranty could be invalidated if illegally obtained.  Id. at 33.

Although we find the issue, of whether the ECOA provides an affirmative defense in a collection action, to be intriguing, we need not resolve it here for, even if the alleged violation of the ECOA can be a proper affirmative defense, or can properly be construed as a Counterclaim, there is no genuine issue of material fact with respect to LOLFC's reason for requiring the signatures of the C. Herring, and J. Herring -- namely, the joint financial information -- and, as a matter of law, LOLFC's requirement, that C. Herring and J. Herring also execute the Guaranties, did not violate the ECOA.

Here, the financial statements that Herring and C. Herring submitted to LOLFC lists their assets, and liabilities, under the heading "Alan and Carla Herring Balance Sheet," are signed by both spouses, and contain no indication that the property listed was anything other than jointly held.  See, Glienke Aff. 1, Docket No. 29-4, Exhibit 26 at p. 27 of 29 and Docket No. 29-6, Exhibit 39 at pp. 52 of 75.  D. Herring and J. Herring submitted their lists of assets and liabilities in an identical format, but also included Schedules of their real estate holdings, with each property labeled as either

jointly or individually owned, and by which spouse.  See, <u>Glienke Aff. 1, Docket No. 29-4</u>, supra at Exhibit 26 at pp. 25-26 of 29, and Docket 29-6, Exhibit 39 at pp. 50-51 of 75.  Notably, the financial statements, and the Schedules, demonstrate that more than seventy (70) percent of D. Herring's, and J. Herring's net assets, which totaled around $3,500.000.00 in 2007, and 2008, were in real estate, <u>id.</u>, that the most valuable real estate was jointly owned by D. Herring, and J. Herring, and that J. Herring owned much in her own right, such that D. Herring was the sole owner of real estate totaling only $240,000.00 in 2007, and 2008, <u>id.</u>, while the Guaranty was for up to $2,875,000.00.[5]

A number of Courts have held that, where the property of a Guarantor is jointly owned by his or her spouse, requiring the spouse to co-sign the Guaranty does not violate the ECOA.  See, <u>Riggs National Bank of Washington D.C. v. Linch</u>, supra at 168-69; <u>Moran Foods, Inc. v. Mid-Atlantic Market Development Co., LLC</u>, supra at

---

[5]LOLFC acknowledges that, in these later financial statements, D. Herring and J. Herring included the Real Estate Schedules.  See, <u>LOLFC's Memorandum in Support of Motion, Docket No. 56</u>, at p. 6 of 32.  However, as LOLFC discusses, Herring and C. Herring did not make any attempt to clarify whether their property was jointly-owned and, as we have detailed, the Schedules demonstrate that D. Herring owned very little of the listed real estate individually, and that the real estate constituted the vast majority of their assets.  As a consequence, no reasonable Juror could conclude that D. Herring's individual assets were sufficient to justify the Guaranty.

441-42 (alternative holding); <u>F.D.I.C v. 32 Edwardsville, Inc.</u>, supra at 1481 (alternative holding); <u>Resolution Trust Corp. v. Townsend Associates, Ltd. Partnership</u>, 840 F. Supp. 1127, 1142 (E.D. Mich. 1993); <u>In re DiPietro</u>, 135 B.R. 773, 777 (Bkrtcy. E.D.Pa. 1992)(finding no violation of the ECOA, where the husband-debtor failed to demonstrate that he owned any individual assets); <u>Paulson v. Centier Bank</u>, 704 N.E.2d 482, 492-93 (Ind.App. 1998)(upholding the Trial Court's finding, that the bank had required the wife of the debtor to execute a guaranty, upon realizing that the debtor had submitted joint financial statements, which included his wife's individual assets, after the husband's business began to decline); see also, <u>United States v. Broussard</u>, 102 F.3d 550 at *3 (5th Cir. 1996)[unpublished](finding that, in a community property State, a creditor does not violate the ECOA by requiring the signature of the loan applicant's spouse).

Further, in order to establish a prima facie case for violating the ECOA, the Herring Defendants would need to demonstrate that the Herring husbands individually qualified for the loans, absent the jointly-owned property. See, <u>Rowe v. Union Planters Bank of Southeast Missouri</u>, 289 F.3d 533, 535 (8th Cir. 2002)(the four (4) elements of an ECOA claim are: 1) membership in a protected class; 2) application for, and qualification for, a loan; 3) the loan was rejected despite the qualifications;

and 4) the Bank continued to approve loans for others with similar qualifications); Matthiesen v. Banc One Mortgage Corp., 173 F.3d 1242, 1246 (10th Cir. 1999)(finding that the plaintiff had failed to demonstrate a prima facie case of an ECOA violation, because she had not proven that she was qualified for the loan); see also, Ford Motor Credit Co v. Russell, 519 N.W.2d 460, 464 (Minn.App. 1994) (finding no genuine issue of material fact on ECOA claim, where the plaintiff failed to rebut the plaintiff's evidence, that she was not creditworthy).

Here, the Herring Defendants have made no allegation -- let alone an evidentiary showing -- which could contradict Glienke's averments and the documents LOLFC has proffered, which demonstrate that LOLFC reasonably understood that it would not be able to recover on the assets, without the signatures of the Herring wives, as joint-owners -- which is simply another way of asserting that the Herring husbands were not creditworthy, in the amount of the loans, in their own right. See, e.g., Riggs National Bank of Washington, D.C. v. Linch, supra at 169.

As a consequence, there is no genuine issue of material fact, and the Record establishes that the Herring Defendants submitted joint financial statements to LOLFC, which demonstrated that the Herring husbands jointly owned substantial property with the Herring wives, such that the Herring husbands, alone, could not

sufficiently guarantee their portion of the credit extended to the Perfect Pig and GIS. Accordingly, as a matter of law, we find that LOLFC did not violate the ECOA by requiring the Herring wives to also guarantee the loans, and the Herring Defendants cannot prevail on their asserted affirmative defense, on the Record presented.

        b.    <u>Jurisdiction Over the Declaratory Judgment</u>.  In their Answer, the Herring Defendants also contend that the Declaratory Judgment, which LOLFC seeks, is an advisory opinion, and therefore, is improper.  The Declaratory Judgment that LOLFC seeks is two-fold, and is based upon the terms of the Guaranties.  LOLFC requests a declaration that:  1) LOLFC is not required to pursue other remedies against the Perfect Pig, and GIS, before enforcing the money Judgments against the Herring Defendants; and 2) LOLFC is not precluded from commencing additional proceedings, or foreclosing on available collateral, by recovering under the money Judgments.

        The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  See, <u>Title 28 U.S.C. §2201(a)</u>.  "For a Declaratory Judgment to issue, there must be

a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" <u>Ashcroft v. Mattis</u>, 431 U.S. 171, 172 (1977), quoting <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 242 (1937). In assessing whether an "actual controversy" exists, we look to "whether 'there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,'" on a case-by-case basis.  See, <u>Marine Equipment Management Co v. United States</u>, 4 F.3d 643, 646 (8th Cir. 1993), quoting <u>Caldwell v. Gurley Refining Co.</u>, 755 F.2d 645 (8th Cir. 1985), quoting, in turn, <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941).

Here, since the Complaint seeks an Order, that the contract waivers are valid, such that LOLFC's other avenues for recovery -- namely, the security interests in collateral, the mortgage, and the Deed of Trust -- are not affected by the instant litigation, and essentially, that the Judgments for damages against the Defendants are enforceable as of the date they are entered, without any further conduct by LOLFC, we find that the controversy before us is not hypothetical.  Cf., <u>Benitec Australia, Ltd v. Nucleonics, Inc.</u>, 495 F.3d 1340, 1349 (Fed. Cir. 2007)("[T]he Supreme Court maintains the necessity of avoiding issuing advisory opinions on hypothetical facts,"

and finding no justiciable controversy, where the plaintiff intended to expand its operations in the future, and sought a Judgment that, in so doing, it would not infringe another's patent.)[internal quotations omitted], cert. denied, 533 U.S. 1014 (2008).

Instead, because LOLFC seeks to collect on the unpaid debt using all means available, and since the Herring Defendants raised a "set off" defense, for collateral and "any other source of repayment" for the loans, which necessarily raises an issue with respect to the validity of the waivers in the Guaranties, we find the circumstances to be analogous to the adjudication of the rights of the parties under a contested insurance policy term, before either party has actually incurred damages. See, e.g., Scottsdale Ins. Co. v. Flowers, 513 F.3d 546 (6th Cir. 2008)(finding that the District Court did not abuse its discretion in exercising jurisdiction over a Declaratory Judgment action, in adjudicating the scope of an insurance policy); Travelers Ins. Co. v. Obusek, 72 F.3d 1148 (3rd Cir. 1995)(adjudicating an insured's right to proceeds); Paul Arpin Van Lines, Inc. v. Universal Transp. Services, Inc., 988 F.2d 288 (1st Cir. 1993)(determining whether a contract was enforceable); Maryland Cas. Co. v. Pacific Coal & Oil Co., supra (the scope of an insurance policy). As a consequence, we find that the sought-after Declaratory Judgment satisfies the requirements of Maryland Casualty Co. v. Pacific Coal & Oil Co., supra, in that there is a substantial

controversy, between parties with adverse legal interests, of sufficient immediacy and reality to warrant relief, which will "clarify and settle the disputed legal relationship and afford relief from the uncertainty and controversy that created the issues." NUCOR Corp. v. Aceros Y Maquilas de Occidente, 28 F.3d 572, 578 (7th Cir. 1994).

        c.     The Merits of the Declaratory Judgment.   Having determined that the Declaratory Judgment is properly before us, the remaining issues, including the Herring Defendants' "set-off" defense, relate to provisions in the Commercial Guaranties.  Guiding our decision on these points is the long history, in Minnesota law that, where contract terms are not ambiguous, they must be given their plain and ordinary meaning, "'and shall be enforced by courts even if the result is harsh.'"  See, Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346-47 (Minn. 2003), quoting Minneapolis Public Housing Auth. v. Lor, 591 N.W.2d 700, 704 (Minn. 1999); Brookfield Trade Center, Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998), citing Employers Mutual Liability Ins. Co. v. Eagles Lodge, 165 N.W.2d 554, 556 (Minn. 1969).

Here, the Commercial Guaranties contain terms which provide that the Guarantors waived any right to require LOLFC "to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other

person," or "to pursue any other remedy within Lender's power," and they also waived any right to any defenses based upon "any 'one action' or 'anti-deficiency' law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action." Glienke Aff. 1, Docket No. 29-6, Exhibit 38 at pp. 37 and 43 of 75.

The Herring Defendants have not raised any issue related to the enforceability of those express waivers, and therefore, we find that the waiver terms of the Guaranties are valid and enforceable. See, Aetna Life Ins. Co v. Anderson, 848 F.2d 104, 107-08 (8th Cir. 1988)("A guarantor's liability is primarily defined * * * by the guaranty, and in the guaranty a guarantor may waive defenses he would otherwise be entitled to raise," and enforcing such a waiver where the defendant failed to demonstrate why it should not be given effect); see also, National City Bank of Minneapolis v. Lundgren, 435 N.W.2d 588, 592 (Minn.App. 1989)(enforcing guarantor's express waiver of defense of release of debtor), review denied (Minn., March 29, 1989). Accordingly, LOLFC is entitled to the Declaratory Judgment it seeks, and we recommend that that portion of their Motion be granted.

d.    <u>The Set-Off Defense</u>.   As we have noted, the Herring Defendants have asserted, as an affirmative defense in their Answer, that their liability should be reduced by the amount of collateral that was held by LOLFC. As LOLFC points out, the most recent Guaranties contained provisions, that the guarantors "waive[d] and agree[d] not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff * * * whether such a claim, demand or right may be asserted * * *." <u>Glienke Aff. 1, Docket 29-6</u>, Exhibit 38, at pp. 38 and 44 of 75. Based upon that contractual language, we find that the set-off defense, for a reduction of damages, fails as a matter of law.

e.    <u>Interest</u>.   The final defense, that was raised in the Defendant's Answer, relates to the amount of interest claimed by LOLFC. As we have noted, there is no dispute that the interest accrues daily, at a rate of $1,336.88, for the entirety of the loans made to the Perfect Pig and GIS. Since LOLFC has stipulated with the Faison Defendants, that they are liable for $5,750,000.00, which was their Guaranty cap, and since LOLFC seeks $2,875,000.00 from D. Herring and J. Herring, which is their Guaranty cap, LOLFC represented, at the Hearing, that it now seeks the entirety of the daily interest accruals from Herring and C. Herring, who have not yet reached their Guaranty cap.

Pursuant to the most recent Guaranty, which Herring and C. Herring signed, they guaranteed "any and all of the Borrower's indebtedness * * * including, without limitation, all loans, advances, interest, costs, debts," inter alia, up to their cap. Glienke Aff. 1, Docket No. 29-6, Exhibit 38 at pp. 41 and 46 of 75. As a consequence, we find that the interest, that accrues daily against the Perfect Pig and GIS, on the total amount of the Perfect Pig's, and GIS's indebtedness -- $1,336.88 -- is recoverable against Herring and C. Herring.

Therefore, having found that LOLFC has satisfied its burden to demonstrate that there is no genuine issue of material fact that would preclude Summary Judgment, and that it is entitled to relief as a matter of law, and having considered the merits of the Herring Defendants' defenses in their Answer, and have found them to be without merit, we recommend that the District Court grant the Plaintiff's Motion for Summary Judgment as to D. Herring, and J. Herring, in the amount of $2,875,000.00, jointly and severally, and grant the Plaintiff's Motion for Summary Judgment as to Herring, and C. Herring, in the amount of $817,280.99, plus interest at a rate of $1,336.88 per day, from March 1, 2010, through the date of entry of Judgment.

In addition, we recommend that the Motion for Summary Judgment be granted with respect to the Declaratory Judgment, that LOLFC is not required to pursue other

remedies, or foreclose on collateral before enforcing the Judgments, and that LOLFC is not precluded from pursuing other legal actions against other parties, or foreclosing on the collateral, as a result of this litigation, and further, we recommend that LOLFC be permitted to seek its costs and attorneys fees.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Plaintiff's Amended Motion for Summary Judgment [Docket No. 59] be granted in its entirety.

Dated:  July 13, 2010                      *s/Raymond L. Erickson*
                                           Raymond L. Erickson
                                           CHIEF U.S.  MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **July 27, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **July 27, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.